UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FRANK CARTER, JR.,
      Petitioner,

vs.                                Case No.:  3:21cv797/LAC/EMT

RICKY D. DIXON,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Frank Carter, Jr. (Carter) filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1).  Respondent (the State) filed an answer and relevant portions of the state court record (ECF Nos. 14 (answer), 14-1 through 14-18 (state court record)).  Carter filed a reply (ECF No. 18).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Carter is not entitled to habeas relief.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF Nos. 14-1 through 14-18).[1]  Carter was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2016-CF-3074, with one count of attempted robbery while armed with a firearm and wearing a mask (Count 1), one count of possession of a firearm by a convicted felon (Count 2), one count of possession of a firearm during commission of a felony (Count 3), one count of aggravated assault by threat with a firearm (actual possession without discharge) (Count 4), one count of grand theft of a firearm (Count 5), and one count of wearing a mask or hood on the property of another (Count 6) (ECF No. 14-1 at 13–14 (second amended information)).  A jury trial on Count 1 was held on March 29, 2017 (ECF No. 14-2 (transcript of jury selection and trial)).  The jury found Carter guilty of attempted robbery as charged, with specific findings that Carter carried and actually possessed a firearm during the course of the attempted robbery, and Carter wore a mask, hood, or other device that concealed his identity in the course of committing the attempted robbery (ECF No. 14-1 at 79 (verdict)).

---

[1] Citations to the state court record refer to the document numbers and page numbers assigned by the court's electronic filing system.

On June 15, 2017, Carter entered a written agreement with the State, pursuant to which Carter agreed to enter a guilty plea to the possession of a firearm by a convicted felon count (Count 2) in exchange for a mandatory minimum sentence of three years in prison on Count 2, to run concurrently with the sentence imposed by the court of Count 1 (ECF No. 14-1 at 120–22 (agreed sentence recommendation)). At a combined plea and sentencing hearing that same day (June 15, 2017), the court conducted a colloquy and accepted Carter's plea to Count 2 (*see* ECF No. 14-1 at 97–119 (transcript of plea and sentencing hearing)).  The court sentenced Carter to twenty years in prison on Count 1, with a mandatory minimum term of ten years, and a concurrent mandatory minimum term of three years in prison on Count 2, with presentence jail credit of 365 days (ECF No. 14-1 at 97–119 (transcript of sentencing); ECF No. 14-1 at 130–37 (judgment)).  The State announced a nolle prosequi as to Counts 3, 4, 5, and 6 (*see* ECF No. 14-1 at 130 (judgment)).

Carter appealed the judgment to the Florida First District Court of Appeal (First DCA), Case No. 1D17-3080 (ECF No. 14-3 (Carter's initial brief); ECF No. 14-4 (State's answer brief)).  On April 6, 2018, the First DCA affirmed the judgment and sentence per curiam without written opinion (ECF No. 14-5 (decision)).  *Carter v. State*, 243 So. 3d 931 (Fla. 1st DCA 2018) (Table).  The mandate issued May 4, 2018 (ECF No. 14-6 (mandate)).

On September 10, 2018, Carter filed a motion to correct illegal sentence in the state circuit court, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (ECF No. 14-7 at 8–10 (Rule 3.800(a) motion)). The circuit court denied the motion in an order rendered on March 14, 2019 (*id.* at 12–14 (order)). Carter appealed the decision to the First DCA, Case No. 1D19-1319 (*id.* at 26–27 (notice of appeal)). On September 18, 2019, the First DCA affirmed the lower court's decision per curiam without written opinion (ECF No. 14-8 (decision)). *Carter v. State*, 279 So. 3d 643 (Fla. 1st DCA 2019) (Table). The mandate issued October 16, 2019 (ECF No. 14-9 (mandate)).

On January 30, 2019, Carter filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (ECF No. 14-10 at 8–44 (Rule 3.850 motion)). Carter subsequently filed an amended Rule 3.850 motion (*id.* at 48–89 (amended Rule 3.850 motion)). The circuit court summarily denied the amended Rule 3.850 motion in an order rendered on November 6, 2019 (*id.* at 99–112 (order)). Carter appealed the decision to the First DCA, Case No. 1D19-4519 (ECF No. 14-11 (Carter's initial brief)). The First DCA affirmed the circuit court's decision per curiam without written opinion on July 10, 2020 (ECF No. 14-13 (decision)). *Carter v. State*, 300 So. 3d 599 (Fla. 1st DCA 2020) (Table). The mandate issued August 7, 2020 (ECF No. 14-14 (mandate)).

On February 1, 2021, Carter filed a successive Rule 3.850 motion in the state circuit court (ECF No. 14-15 at 8–28 (successive Rule 3.850 motion)). The circuit court denied the Rule 3.850 motion as untimely and successive (*id.* at 52–53 (order)). Carter appealed the decision to the First DCA, Case No. 1D21-1858 (ECF No. 14-15 at 74 (notice of appeal)). The First DCA affirmed the circuit court's decision per curiam without written opinion on October 25, 2021 (ECF No. 14-16 (decision)). *Carter v. State*, 327 So. 3d 804 (Fla. 1st DCA 2020) (Table). The mandate issued November 22, 2021 (ECF No. 14-17 (mandate)).

On May 19, 2021, while Carter's second Rule 3.850 was pending, he commenced this federal habeas action (*see* ECF No. 1).

## II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2] Justice O'Connor described the appropriate test:

---

[2] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

---

Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The

question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996]

is not whether a federal court believes the state court's determination was incorrect

but whether that determination was unreasonable—a substantially higher threshold."

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

AEDPA also requires federal courts to "presume the correctness of state courts'

factual findings unless applicants rebut this presumption with 'clear and convincing

evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under

§ 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S.

at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete
> bar on federal-court relitigation of claims already rejected in state
> proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333,
> 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata
> rule" under § 2244). It preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with this Court's precedents. It goes no
> further. Section 2254(d) reflects the view that habeas corpus is a "guard
> against extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal. *Jackson v.
> Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979) (Stevens, J., concurring in judgment). As a condition for
> obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility
> for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the petitioner must show that he is in custody "in violation of the Constitution or laws and treaties of the United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice," meaning, the error "had a substantial and injurious effect or influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

## III.    CARTER'S CLAIMS

### A.    Ground One:   "The trial court reversibly erred in denying Petitioner's JOA because the evidence was insufficient to show attempted robbery."

Carter argues the evidence was insufficient to establish an attempted robbery, and the trial court's denial for his motion for judgment of acquittal (JOA) was erroneous (ECF No. 1 at 9). Carter states he presented this claim to the state court on direct appeal (*id.* at 9–10).

The State asserts an exhaustion defense, arguing that although Carter argued on direct appeal that the trial court erred by denying the motion for JOA, Carter's argument was based on state law and did not fairly present a federal claim (*see* ECF

No. 14 at 11–12).  The State contends to the extent Carter asserts a federal challenge to the sufficiency of the evidence, the First DCA's adjudication of the claim was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 12–18).

Carter argues in his reply that the state court was adequately apprised of the federal nature of his claim for two reasons (*see* ECF No. 18 at 2–4).  First, he "federalized" his sufficiency of the evidence claim in "Point One" of his Rule 3.850 motion (*id.* at 2–3).  Second, the state cases he cited in his brief on direct appeal cited federal cases on the sufficiency of the evidence issue, and the federal and state standards are the same (*id.* at 3–4).  Carter argues he is entitled to federal habeas review of Ground One (*id.* at 4–6).

Before seeking federal habeas relief under § 2254, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277–78.

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270–71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation'") (quoting *Kelley*, 377 F.3d at 1344–45). Courts apply "fair presentation" principles "with common sense and in light of the purpose underlying the exhaustion requirement—namely, giving the state courts 'a meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

"[A] petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015). A petitioner does so, for example, by "including in his claim before the state appellate court the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Lucas*, 682 F.3d at 1351

(quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)); *see also Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (concluding that petitioner's federal claims were "fairly presented" when he provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

A petitioner does not satisfy the exhaustion requirement "merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.'" *Lucas*, 682 F.3d at 1352 (quoting *Kelley*, 377 F.3d at 1343–44). Similarly, "a petitioner cannot 'scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *French*, 790 F.3d at 1271 (quoting *Kelley*, 377 F.3d at 1345).

As previously noted, Carter makes two arguments in response to the State's exhaustion defense. Carter first argues he "federalized" his sufficiency of the evidence claim in "Point One" of his Rule 3.850 motion (*see* ECF No. 18 at 2–3). Second, Carter argues the state cases he cited in his brief on direct appeal cited federal cases on the sufficiency of the evidence issue, and the federal and state standards are the same (*id.* at 3–4).

The state court record does not support Carter's first argument.  Carter did not "federalize" his sufficiency of the evidence claim in "Point One" of his Rule 3.850 motion.  In the "Procedural History" section of Carter's Rule 3.850 motion, he simply reported that he presented the following issue on direct appeal:

POINT ONE

WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JOA WHEN ITS DECISION WAS BASED ON COMPETENT AND SUBSTANTIAL EVIDENCE SHOWING THAT APPELLANT COMMITTED ATTEMPTED ARMED ROBBERY

(ECF No. 14-10 at 51 (amended Rule 3.850 motion)).  Carter's amended Rule 3.850 motion presented five claims of ineffective assistance of counsel and one claim regarding the cumulative effect of counsel's alleged errors (*id.* at 61–86).  Carter did not fairly present a freestanding sufficiency of the evidence claim in his amended Rule 3.850 motion.

Carter's second argument is also unavailing.  Carter argues that the state cases he cited in his brief on direct appeal cited federal cases on the sufficiency of the evidence issue.  Review of Carter's initial brief demonstrates otherwise.  Carter cited only Florida state cases in his initial brief (*see* ECF No. 14-3 at 4, 9–11).  One of the Florida cases, *Franqui v. State*, 699 So. 2d 1317 (Fla. 1997), discussed federal cases, but those federal cases related to the issue of the admissibility of a co-defendant's

confession, not the issue of the sufficiency of the evidence.  Carter cited *Franqui* as authority for the elements of attempted armed robbery under Florida law and the manner in which the intent element may be proved (*see* ECF No. 14-3 at 9).

Carter's initial brief to the First DCA  did not cite any federal cases, let alone *Jackson v. Virginia* 443 U.S. 307 (1979), the Supreme Court case establishing the federal sufficiency of the evidence standard.  Carter did not mention the *Jackson* standard; he did not cite to the Due Process Clause of the Fourteenth Amendment or any other federal constitutional provisions; indeed, he did not even mention the word "federal" or refer to federal law in any other way.  Carter framed his claim in terms of state law and he argued only Florida law.  Nothing in Carter's brief put the First DCA on notice that the issue was being presented as a federal constitutional claim.

Carter's claim of trial court error with respect to the denial of the motion for JOA was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted.  *See Patterson v. Fla. Dep't of Corr.* 785 F.3d 449, 451 (11th Cri. 2015); *see also, e.g.*, *Pearson v. Sec'y,  Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir. 2008) (unpublished but cited as persuasive authority) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard

identical to federal standard); *Cook v. McNeil*, 266 F. App'x 843, 845–46 (11th Cir. 2008) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in *Jackson v. Virginia*, 443 U.S. 307 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."). *But see Mulinix v. Sec'y for Dep't of Corr*, 254 F. App'x 763 (11th Cir. 2007) (petitioner's federal sufficiency of evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).

Carter's failure to fairly present a federal sufficiency of the evidence claim to the state courts renders his claim unexhausted. Further, any attempt by Carter to return to state court to present the claim would be futile under Florida's procedural default doctrine. Therefore, the claim is procedurally barred from federal review. Carter has not demonstrated he is entitled to federal review of Ground One through

any recognized exception to the procedural bar, therefore, federal habeas relief should be denied.

### B.    Ground Two:  "Ineffective assistance of counsel by failing to file a motion for a new trial on the weight of the evidence."

Carter argues trial counsel was ineffective for failing to file a motion for new trial on the following grounds:  (1) there was no evidence Carter attempted to commit a robbery; (2) Carter abandoned the place of the robbery; (3) Carter never took any items or money; (4) there was no evidence of the use of force, violence, or assault; (5) there was no evidence of intent; and (6) Carter's recorded interview with police demonstrated that his motive for entering the location (a convenience store) was to fight an individual, not commit a robbery (ECF No. 1 at 11).  Carter states he presented this ineffective assistance of counsel (IAC) claim to the state courts in his Rule 3.850 motion and post-conviction appeal (*id.* at 11–12).

The State concedes Carter exhausted this claim (*see* ECF No. 14 at 18–19). The State contends the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based upon an unreasonable determination of the facts (*id.* at 20–25).

### 1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To obtain relief under *Strickland*, the petitioner must show (1) deficient performance by counsel, and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If the petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances," and reasonableness is measured "under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).  "Even if many reasonable lawyers would not have done as defense counsel did, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the *Strickland* standard, the petitioner's burden of demonstrating prejudice is high.  *See Wellington v. Moore*, 314 F.3d 1256, 1260

(11th Cir. 2002). To establish prejudice, the petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing *Richter*, 562 U.S. at 112).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must

guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

### 2.     Federal Review of State Court Decision

As the State concedes, Carter presented Ground Two as Ground One of his amended Rule 3.850 motion (ECF No. 14-10 at 60–66 (amended Rule 3.850 motion)).

The circuit court adjudicated Carter's claim as follows:

Defendant's motion includes claims of ineffective assistance of counsel.  In analyzing postconviction motions asserting such claims, a defendant must demonstrate both a deficient performance by counsel and subsequent prejudice resulting from that deficient performance to merit relief.  *See Hutchinson v. State*, 17 So. 3d 696, 700 (Fla. 2009), citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In order to find prejudice, "the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different."  *Id.*

"As a general proposition a defendant is entitled to an evidentiary hearing on a motion for post-conviction relief unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient."  *See Walls v. State*, 926 So. 2d 1156, 1169 (Fla. 2006).  Defendant must establish "a prima facie case based upon a legally valid claim" which may not be based on conclusory allegations.  *Id.*  Also, in that Defendant has been given the opportunity to amend any insufficient claims, such claims which continue to be insufficiently pled

may be denied with prejudice. *See Nelson*, 977 So. 2d at 711: Fla. R. Crim. P. 3.850(f).

. . . .

Defendant claims trial counsel was ineffective for failing to file a motion for new trial based on the weight and/or sufficiency of the evidence. Defendant alleges the State never established that the robbery attempt failed or that he was prevented by someone from committing the robbery, that he attempted to take anything from the victim, or that there was any evidence of intent. Defendant further alleges he voluntarily abandoned the incident; that at the time of the offense, he was looking for someone and was worried about an altercation; and he suffers from mental illness, had been drinking, and was depressed.

To prove that Defendant committed attempted armed robbery, the State had to show an intent to commit a robbery, the commission of some physical act in furtherance of the robbery, and the use of a firearm. *See Meeks v. State*, 247 So. 3d 700, 705 (Fla. 1st DCA 2018). Under section 812.13(1), a robbery is defined as follows:

> "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Under section 812.13(2)(a), "If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree." "Attempt" can be shown by "any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof." *See* § 777.04, Fla. Stat. "[I]ntent may be proved by considering the conduct of the accused and his colleagues before, during, and after the alleged attempt along with any other relevant circumstances." *Franqui v. State*, 699 So. 2d 1312, 1317 (Fla. 1997) (other citation omitted).

At trial, the store surveillance video of the incident was played for the jury. (Exhibit F, p. 50.) The store clerk Joshua Matthews testified he was in the back of the store when Defendant entered, he remained hiding, and Defendant did not see him. (Exhibit F, pp. 52, 56.) Matthews was the only other person in the store at the time. (Exhibit F, p. 56.) He saw Defendant standing up front, dressed in dark clothes with a mask around his face and handgun in his hand. (Exhibit F. p. 52.) Defendant called out for someone, but Matthews was scared for his life and did not answer. (Exhibit F, pp. 53–54.) Defendant then left and Matthews hit the panic button, locked the door, and called the police. (Exhibit F, p. 54.) After the police arrived, Matthews identified Defendant in the back of the police car. (Exhibit F. pp. 54, 59.) Matthews also testified the cash register required special knowledge to push the "no sale" button in order to open the cash drawer. (Exhibit F, p. 55.) Matthews testified Defendant did not attempt to take anything from him or the store, did not attempt to open the cash register, and walked out of the store. (Exhibit F, pp. 57–58.) Matthews also testified Defendant was a regular customer. (Exhibit F, pp. 58–59.)

Deputy Matthew Roe testified he responded to the store alarm. (Exhibit F, p. 61.) When he first arrived, he saw a man and a woman pulling and knocking on the door to the store. (Exhibit F, p. 63.) He next saw Defendant in a fenced-in area just north of the store, dressed all in black with a mask around his face. (Exhibit F, pp. 64–65.) Defendant retreated further back, briefly out of sight, and Roe followed and ordered him to the ground. (Exhibit F, p, 64.) Roe viewed the store surveillance video, in which he observed a firearm in Defendant's hand. (Exhibit F, pp. 65–66.) Roe interviewed Defendant in the back of Roe's car, and the recording was played for the jury. (Exhibit F, pp. 67–68, 70–81.)

In the interview, Defendant stated the store clerk knew him. (Exhibit F, p. 71.) He stated he was there to beat up the dude that was in front of the store. (Exhibit F. p. 72.) Defendant stated he did not know the man's name but that the man owed him money. (Exhibit F. pp. 72–73.) Defendant stated he went in the store with a mask on because he saw the man coming up the street. (Exhibit F, p. 73.) When he walked in the store, Defendant said "where you at," but nobody

came, and he walked out of the store. (Exhibit F. p. 75.) Defendant admitted wearing a mask and having a gun but denied taking the gun into the store, stating he left it outside. (Exhibit F, pp. 76. 79–81.)

The State presented evidence that the firearm was located directly behind the store. (Exhibit F, pp. 84–85.) The State also presented evidence that the gun was loaded and ready to fire and functioned as designed. (Exhibit F. pp. 92, 96, 102.)

In closing, the State argued the evidence showed Defendant walked into the store and up to the cash register, wearing long dark clothes and a mask and carrying a gun that was ready to be fired; called out for someone; and when no one answered, walked out. (Exhibit F, pp. l30–132, 137.) The State further argued Defendant then hid behind the store so that he could return to try again. (Exhibit F. pp. 133–135.) The State argued Defendant's intent to rob the store for cash by putting someone in fear was shown by the evidence, which also showed that Defendant was prevented by the clerk not responding and also by the police showing up. (Exhibit F. pp. 131–134, 136.)

The record shows the weight of the evidence was consistent with the finding of guilt as to the elements of attempted armed robbery with a mask. In light of the evidence introduced at trial, there was no reasonable probability that a motion for new trial would have been granted. *See Johnson v. State*, 247 So. 3d 689, 697 (Fla. 1st DCA 2018). Therefore, counsel was not ineffective as to this claim.

(ECF No. 14-10 at 99–104 (order)). The First DCA affirmed the circuit court's

decision per curiam without written opinion (ECF No. 14-13 (decision)). *Carter v.*

*State*, 300 So. 3d 599 (Fla. 1st DCA 2020) (Table).

Where, as here, the relevant state court decision on the merits does not come

accompanied with the state court's reasons, the federal court should "look through"

the unexplained decision to the last related state court decision that does provide a

relevant rationale.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal

court should then presume that the unexplained decision adopted the same reasoning.

*Id.*

Although an ineffective assistance of counsel claim is a federal constitutional

claim which the court considers in light of the clearly established law of *Strickland*,

when "the validity of the claim that [counsel] failed to assert is clearly a question of

state law, . . . we must defer to the state's construction of its own law."  *Alvord v.

Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an

ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue

of ineffective assistance—even when based on the failure of counsel to raise a state

law claim—is one of constitutional dimension," but, "[o]n the other hand, the

validity of the claim [counsel] failed to assert is clearly a question of state law, and

we must defer to the state's construction of its own law.") (citations omitted)[3]; *see

also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense

counsel cannot be deemed ineffective for failing to make a state-law-based objection

when the state court has already concluded that the objection would have been

overruled under state law; to conclude otherwise would require the federal habeas

---

[3] *Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F. App'x 806 (11th Cir. 2007).

court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim:  "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

The claim Carter's defense counsel failed to assert was that the verdict was contrary to the weight of the evidence, therefore, Carter was entitled to a new trial under Rule 3.600(a)(2) of the Florida Rules of Criminal Procedure.  The viability of a motion for new trial is clearly a question of state law.  The state court already concluded there was no reasonable probability a motion for new trial would have

been granted under state law, based upon the evidence presented at Carter's trial.[4]

Defense counsel cannot be deemed ineffective for failing to make a motion for new

trial that had no reasonable probability of success.

Carter has not demonstrated that the state court's adjudication of Ground Two

was based upon an unreasonable determination of the facts, or contrary to or an

unreasonable application of *Strickland*.   Therefore, he is not entitled to federal

habeas relief.

**C.    Ground Three:    "Counsel rendered I.A.C. by failing to motion/investigate the examination for m[ental]/h[ealth] defense and/or mitigation."**

Carter argues trial counsel was aware of Carter's mental disorder/learning

disability but completely failed to investigate the possibility of a mental health

defense or mitigation argument to lessen Carter's sentence exposure (ECF No. 1 at

13).  Carter states he presented this IAC claim to the state courts in his Rule 3.850

motion and post-conviction appeal (*id.* at 13–14).

The State concedes Carter exhausted this claim (*see* ECF No. 14 at 25).  The

State contends the state court's adjudication of the claim was not contrary to clearly

established  federal  law,  did  not  involve  an  unreasonable  application  of  clearly

---

[4] The state court's factual findings with respect to the evidence presented at Carter's trial are supported by the trial transcript.

established federal law, and was not based upon an unreasonable determination of the facts (*id.* at 26–37).

### 1. Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2. Federal Review of State Court Decision

As the State concedes, Carter presented Ground Three as Ground Three of his amended Rule 3.850 motion (ECF No. 14-10 at 72–77 (amended Rule 3.850 motion)). Carter alleged at the time of the offense, he was suffering from the following: social withdrawal, hostility or suspiciousness, cognitive dysfunction, flat and expressionless gaze, paranoid ideation, depression, insomnia, odd or irrational statement, forgetful, unable to concentrate, delusions, hallucinations, impulsivity, increased energy, attention deficit, and "hard to focus" (*id.* at 73–74). Carter alleged he suffered from ADHD and "clearly was suffering from bipolar and major depressive disorder" brought on by the death of his mother in 2014 (two years prior to the attempted robbery) and the loss of his employment (*id.* at 66, 74). Carter alleged he was treated at the Lakeview Center and had undergone two years of counseling, including psychotropic medication (*id.* at 66). Carter alleged several family members were willing to testify concerning his "mental decline" (*id.* at 74). Carter alleged after he was sent to prison for the attempted robbery, his

"psychological condition" was "completely transformed" by obtaining his G.E.D., taking "self-betterment" courses, studying the Bible, attending chapel services, and receiving "Christian counseling" (*id.* at 73).

Carter argued defense counsel should have moved for appointment of an expert to determine if he had a viable mental health defense (ECF No. 14-10 at 74–75). Carter argued defense counsel also should have obtained a mental health expert to present evidence in support of sentence mitigation (*id.* at 75).

The circuit court adjudicated Ground Three as follows:

> Defendant claims trial and sentencing counsel were ineffective for failing to move for an examination for a mental health defense and for failing to investigate/develop proper argument towards mitigation during plea and sentencing. He alleges that at the time of the allegations, he was suffering from a number of mental health issues and had been drinking heavily on the day in question. He asserts had counsel motioned for a forensic psychiatrist and for mental health/mitigation, Defendant would not have received a 20-year sentence.

> This claim is insufficiently pled as to a mental health defense, in that Defendant fails to allege he was insane at the time of the offense. *See Turem v. State*, 220 So. 3d 504, 507 (Fla. 5th DCA 2017). Otherwise, Defendant's robbery charge was not subject to a diminished capacity defense. *See Greer v. State*, 804 So. 2d 620, 621 (Fla. 3d DCA 2002).

> As to mitigation at sentencing, there was testimony at sentencing that Defendant could not find a job, had six kids and a wife, was depressed, and had lost his mother. (Exhibit G, pp. 5–12.) Defendant also indicated through correspondence to the Court that was introduced at sentencing that he had been drinking. (Exhibit H.) Defendant's

allegations are insufficient to show he would have received a lesser sentence had counsel had him mentally evaluated as well.  In light of the evidence submitted at trial and sentencing, Defendant's contention that he would have received a lesser sentence is speculative.  *See President v. State*, 197 So. 3d 1151, 1152 (Fla. 4th DCA 2016).

Defendant also alleges he requires treatment for a severe mental disorder that is completely unrelated to substance abuse and he is amenable to treatment.  To the extent he is claiming counsel should have sought a downward departure, Defendant's allegation that he had a mental disorder unrelated to substance abuse is insufficiently pled in light of the record and his other allegations of alcohol and drug use. *See State v. VanBebber*, 848 So. 2d 1046, 1050 (Fla. 2003) (finding intoxication at the time of the offense cannot support a downward departure).

Otherwise, Defendant's lowest permissible sentence was 55.6 months in prison under his scoresheet.  (Exhibit N.)  However, he was also subject to a 10-year mandatory minimum sentence.  Based on the above, Defendant fails to show a reasonable probability he would have received a downward departure sentence. *See Profetto v. State*, 198 So. 3d 684, 685 (Fla. 2d DCA 2015).

(ECF No. 14-10 at 107–08 (order)).  The First DCA affirmed the circuit court's

decision per curiam without written opinion.

Although insanity is a recognized defense in Florida, that defense is

established when the defendant proves, by clear and convincing evidence, that:

(a) The defendant had a mental infirmity, disease, or defect; and

(b) Because of this condition, the defendant:

1.  Did not know what he or she was doing or its consequences; or

2.  Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.

Fla. Stat. § 775.027.  Any mental infirmity, disease, or defect that does not qualify as "insanity" does not constitute a valid defense.  *See id.*; *see also Evans v. State*, 946 So. 2d 1 (Fla. 2006) (holding that trial counsel was not ineffective for failing to present evidence that the defendant suffered from a head injury which led to a deficiency in impulse control, which, in turn, led to the defendant's inability to control his rage and violent behavior, because such evidence was evidence of diminished capacity, which was not a viable defense in Florida); *Thompson v. State*, 88 So. 3d 312, 321 (Fla. 4th DCA 2012) ("Florida does not recognize a diminished capacity defense.").  Accordingly, any evidence of Carter's alleged diminished capacity would have been inadmissible.  *See Beckman v. State*, 230 So. 3d 77 (Fla. 3d DCA 2017) (holding that evidence defendant suffered from Asperger's syndrome for the purpose of proving defendant did not have premeditated intent to kill was inadmissible).

Carter's factual allegations in his amended Rule 3.850 motion did not suggest a mental health expert would have determined that Carter's mental condition at the time of the attempted robbery rose to the level of insanity.  Any evidence of a lesser mental state would not have been admissible at trial.  Therefore, the state court

reasonably rejected Carter's claim that defense counsel was ineffective for failing to seek appointment of a mental health expert and/or investigate a mental health defense.

The state court also reasonably rejected Carter's claim that counsel was ineffective for failing to present evidence of his mental condition(s) as a mitigating circumstance at sentencing.  One of the mitigating circumstances which may justify a downward departure from the lowest permissible sentence, as calculated on the defendant's criminal punishment code scoresheet, is that the defendant "requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction . . . and the defendant is amenable to treatment."    Fla. Stat. § 921.0026(2)(d).  However, the defendant's substance abuse or addiction, including intoxication at the time of the offense, is not a mitigating factor and does not, under any circumstances, justify a downward departure from the permissible sentencing range.  *See* Fla. Stat. § 921.0026(3).

As the state court found, Carter's lowest permissible sentence was 55.6 months in prison according to his scoresheet (*see* ECF No. 14-10 at 229–31 (criminal punishment code scoresheet)).  The statutory maximum for the attempted robbery armed with a firearm and while wearing a mask was life in prison, with a ten-year mandatory minimum pursuant to Florida's 10-20-Life statute (*see* ECF No. 14-10 at

125 (amended sentence recommendation), 229–31 (scoresheet)).  As the state court

determined, the trial court could not have imposed a sentence less than the 10-year

mandatory minimum under the 10-20-Life statute.  *See Profetto*, 198 So. 3d at 685.

Although the court could have imposed a sentence less than twenty years, but

at least ten, the state court reasonably concluded Carter failed to show he would have

received a lesser sentence if counsel had argued the mitigating factor of Carter's

mental disorder(s).  Florida courts apply a two-part analysis for determining the

propriety of a downward departure sentence.  First, the trial court must determine

whether it *can* depart, i.e., whether there is a valid legal ground and adequate factual

support for that ground in the case pending before it.  *Banks v. State*, 732 So. 2d

1065, 1067 (Fla. 1999) (emphasis added).  To satisfy the first step, the defendant

must present competent substantial evidence to support the departure.  *Id.*  If the

defendant makes that showing, the trial court must then determine whether it *should*

depart, i.e., whether departure is the best sentencing option for the defendant.  *Id.* at

1068 (emphasis added).  The court must weigh the totality of the circumstances in

the case, including aggravating and mitigating factors.  *Id.*  Specifically with respect

to the mitigating factor of a defendant's mental disorders, the sentencing court may

consider whether the state prison system can provide the specialized treatment a

defendant requires.  *See State v. Chubbuck*, 141 So. 3d  1163, 1171 (Fla. 2014)

(holding Florida law does not require a defendant to prove that the FDOC cannot provide the required specialized treatment, but the sentencing court may consider that fact in deciding whether to impose a downward departure sentence).

At sentencing, defense counsel submitted Carter's handwritten letter to the court (ECF No. 14-10 at 213–15). In the letter, Carter described the offense as the result of "my bad choice and decision" (*id.* at 213). Carter stated he did not take anything from the store and walked away "when I came to my senses" (*id.*). Carter stated the criminal case "truly open [sic] my eyes and shedded [sic] light on what a mind altering substance such as alcohol can impaire [sic] someone's judgement [sic] and make them make bad choices and decisions" (*id.* at 213–14). Carter stated he was focused on his recovery, getting a job, going to church, abstaining from alcohol, and involving himself with "positive things" (*id.* at 214). Carter did not mention any mental health issues unrelated to drug or alcohol use.

Defense counsel presented three witnesses on Carter's behalf, Willie Mae George (Carter's neighbor), Velma Dale (one of Carter's aunts), and Ethel George (another neighbor) (*see* ECF No. 14-10 at 203–04). Willie Mae George testified Carter was a "good family man" (*id.* at 203–04). Velma Dale testified Carter went to the scene of the attempted robbery "with bad intentions" but left before "anything unthwart [sic] happened" (*id.* at 205). Ms. Dale testified Carter was a good person

who took care of his six children, but Carter lost his parents and his job and was unable to find another job (*id.* at 206–07).  Ethel George testified the night before the attempted robbery, Carter asked her for money to buy food for his children (*id.* at 209).  Ms. George testified Carter was crying and had fallen into a deep depression (*id.*).  She testified Carter lost his mother and his job, and had six children to feed (*id.* at 109–10).

Defense counsel requested a ten-year sentence, arguing that Carter retreated and did not commit the robbery (ECF No. 14-10 at 210–11).  The State requested a twenty-year sentence due to Carter's criminal history, including convictions in 2001 (burglary, criminal mischief, and trespassing), 2003 (resisting an officer without violence and disorderly conduct (both misdemeanors)), 2005 (felony possession of cocaine, misdemeanor battery, and violation of probation), 2007 (felony fleeing and eluding and misdemeanor driving with a suspended license), 2010 (DUI, driving with a suspended license, violation of probation), and 2011 (misdemeanor battery) (*see* ECF No. 14-10 at 211–12 (excerpt of sentencing transcript), 229–31 (sentencing scoresheet)).

Even if defense counsel had presented evidence that Carter was previously diagnosed with ADHD, a "major learning disability," bipolar disorder, and major depression and previously treated with counseling and medication, this would have

satisfied only the first step of the downward departure analysis.  The second step required the sentencing court to weigh the totality of the circumstances and determine whether downward departure was the best sentencing option for Carter. *See Banks*, 732 So. 2d at 1068.  Considering Carter's history of criminal conduct even when he was under supervision on probation (as evidenced by the VOP charges in his criminal history), and Carter's admitted alcohol use, the state court reasonably determined Carter failed to show a reasonable probability the sentencing court would have imposed less than twenty years if defense counsel had presented evidence of Carter's mental health history.

Carter has not demonstrated the state court's adjudication of Ground Three was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of *Strickland*.  Carter thus is not entitled to federal habeas relief on Ground Three.

### D.    Ground Four:  "Counsel rendered I.A.C. by interfering with Petitioner's right to testify in his own defense."

Carter argues trial counsel infringed his right to testify by advising him that his testimony would be harmful to the defense, and it was in his best interest not to testify (ECF No. 1 at 15).  Carter alleges without his testimony, the jury could not know his intent and state of mind (*id.*).  He alleges he would have testified he recently lost his mother, suffered from "mental issues," had consumed alcohol, and

was looking for a man who owed him money (*id.*).  Carter states he presented this IAC claim to the state courts in his Rule 3.850 motion and post-conviction appeal (*id.* at 16–17).

The State concedes Carter exhausted this claim (*see* ECF No. 14 at 38).  The State contends the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based upon an unreasonable determination of the facts (*id.* at 38–43).

### 1.    Clearly Established Federal Law

The *Strickland* standard governs this claim.

### 2.    Federal Review of State Court Decision

As the State concedes, Carter presented Ground Four as Ground Four of his amended Rule 3.850 motion (ECF No. 14-10 at 77–80 (amended Rule 3.850 motion)).

The circuit court adjudicated Carter's claim as follows:

> Defendant claims counsel was ineffective for failing to ensure Defendant the right to testify in his own defense.  He alleges counsel misadvised him and convinced him his testimony would be harmful. He asserts the jury was prevented from hearing he had been drinking heavily, was experiencing sever [sic] mental issues, had discontinued psychological treatment and medications, had recently lost his job, was looking for a man who owed him money, and completely abandoned his criminal episode.  He asserts had he testified the jury could have

assessed his demeanor and credibility, and there would have been a better outcome.

At trial, Defendant advised the trial court he did not wish to testify and that he understood the decision was his. (Exhibit F, pp. 110–112.) The trial court conducted a thorough colloquy and determined that Defendant's decision not to testify was knowingly, voluntarily, and freely done. (Exhibit F. p. 113.) Defendant's assurances to the trial court demonstrated that he was satisfied with counsel's advice not to testify, and the record shows he was the final decisionmaker on whether to testify. *See Garcia v. State*, 21 So. 3d 30, 32 (Fla. 3d DCA 2009). Also, Defendant's allegations fail to show counsel's advice that his testimony would be harmful was deficient performance. *See Lott v. State*, 931 So. 2d 807, 819 (Fla. 2006) (finding that in order to establish deficient performance, a defendant must show no reasonable attorney would have discouraged him from testifying).

Moreover, there was no reasonable probability of a different outcome had Defendant testified as alleged. The jury watched a video in which Defendant made statements to law enforcement that he was looking for a man who owed him money and that he walked out of the store when nobody came, as well as Defendant's denials that he was there to rob the store. (Exhibit F. pp. 70–81.) Trial counsel argued in closing that Defendant did not commit a robbery and abandoned any robbery attempt, as shown by evidence that he had no contact with anyone in the store and never tried to force the register open or take anything, and he simply walked out on his own. (Exhibit F. pp. 140–146.) Therefore, much of Defendant's proposed testimony would he duplicative. Also, the fact Defendant had prior convictions could have been pointed out to the jury, which could be harmful. Based on the record and evidence presented at trial, as discussed above and elsewhere herein, there was no reasonable probability of a different outcome had Defendant testified.

(ECF No. 14-10 at 108–09 (order)). The First DCA affirmed the circuit court's

decision per curiam without written opinion.

The state court reasonably determined Carter failed to show counsel performed deficiently by advising him it was in his best interest not to testify. Carter alleges he would have testified he recently lost his mother, suffered from "mental issues," had consumed alcohol, and was looking for a man who owed him money As discussed in Ground Three *supra*, evidence regarding Carter's alleged "mental issues" would not have been admissible at trial. Similarly, evidence of Carter's "state of mind," i.e., that he was intoxicated and recently lost his mother, would not have been relevant to the issue of whether he intended to commit a robbery. Although evidence that Carter was looking for a man who owed him money would have been admissible to show lack of intent, the jury heard the recording of Carter's conversation with Officer Roe, during which Carter told the officer he was in the store wearing a mask because he was looking for a man who owed him money and was going to beat up the man (ECF No. 14-10 at 160–70 (excerpt of trial transcript)). Moreover, if Carter had testified, the prosecutor could have attacked his credibility with evidence he had been previously convicted of felony offenses. *See Stallworth v. State*, 53 So. 3d 1163, 1165 (Fla. 1st DCA 2011).

The state court's rejection of Carter's IAC claim on the deficient performance prong was reasonable.[5]   Therefore, Carter is not entitled to habeas relief on Ground Four.

**E.      Ground Five:   "Counsel rendered I.A.C. by failing to properly advise Petitioner regarding the plea offer and spend adequate time to prepare with Petitioner."**

Carter claims defense counsel was ineffective for advising him to reject the State's ten-year plea offer and assuring him she could win the case because the State did not have sufficient evidence to prove attempted robbery (ECF No. 1 at 19). Carter alleges trial counsel spent only one hour with him, was agitated, and did not adequately communicate (*id.*).   Carter alleges counsel did not obtain "psychological assistance" for him to "help him understand" (*id.*).   Carter states he presented this IAC claim to the state courts in his Rule 3.850 motion and post-conviction appeal (*id.* at 19–20).

The State concedes Carter exhausted this claim (*see* ECF No. 14 at 44).   The State contends the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly

---

[5] For this reason, the court need not address the state court's assessment of the prejudice prong. *See Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) ("Because a petitioner's failure to establish either deficient performance or prejudice is fatal to a *Strickland* claim, we need not address both *Strickland* prongs if the petitioner fails to satisfy either one of them.").

established federal law, and was not based upon an unreasonable determination of the facts (*id.* at 44–49).

## 1.    Clearly Established Federal Law

The two-part test articulated in *Strickland*, applies to claims that counsel was ineffective during the plea process. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (applying *Strickland*'s two-part test to habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Missouri v. Frye*, 566 U.S. 134, 140, 147–51 (2012) (applying *Strickland*'s two-part test to habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).  As discussed *supra*, to obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"[T]here is no expectation that competent counsel will be a flawless strategist or tactician." *Richter*, 562 U.S. at 110.  Counsel's performance is deficient if it falls below the wide range of competence demanded of attorneys in criminal cases, and

there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688–89. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

When the prejudice alleged is the defendant proceeding to trial instead of pleading guilty, he must show a reasonable probability that, but for his counsel's errors: (1) an offer would have been presented to the court; (2) the court would have accepted it; and (3) his conviction, sentence, or both would have been less severe under the offer's terms than it was under the judgment and sentence that he actually received. *Lafler*, 566 U.S. at 164; *see also Frye*, 566 U.S. at 149–50 (stating that a defendant whose counsel failed to communicate a plea offer to him "must show not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court").

## 2.    Federal Review of State Court Decision

As the State concedes, Carter presented Ground Five as Ground Five of his amended Rule 3.850 motion (ECF No. 14-10 at 81–84 (amended Rule 3.850 motion)).  Carter alleged the following facts in support of his claim:

> 1.  Counsel was extremely short and agitated towards Defendant making communication impossible in building his defense for trial.
>
> 2.  Counsel spent approximately 1 hour in face time with the Defendant. . . .  Counsel's preparation for trial consisted solely of 16 hours with defendant provided I.AC. [sic]
>
> 3.  Ms. Green [defense counsel] could not properly communicate with Defendant and did not secure a Mental Health Expert that would have helped Defendant understand the nature of the proceedings and scope of the favorable plea offer.
>
> 4.  The Defendant tried to get Psychological assistance while in county jail even asking counsel who did nothing.
>
> 5.  Trial counsel definitely knew about Defendant's major mental issues yet did nothing at all to ensure he was "fit" for trial and very well derailed the whole plea negotiation process.
>
> 6.  The State offered 10 years Florida Department of Corrections but most likely would have come down if they knew the true extent of Defendant's mental health history.
>
> 7.  Grounds Two and Three display Defendant's mental health issues, he truly did not trust his appointed counsel and thought she was working against him.  She told him he did not commit an armed robbery "she could beat it," also he was very impressionable, and did not truly comprehend the exposure of going to trial.

(ECF No. 14-10 at 81–82 (amended Rule 3.850 motion)) (verbatim).  Carter alleged he "was not aware of the true nature of the proceedings, did not wish to go to trial

and was completely surprised by counsel's trap" (*id.* at 83).  Carter alleged counsel

"fail[ed] to mount a viable defense at trial" and should have "strongly

recommended" he accept the plea offer (*id.* at 84).  Carter alleged he would accepted

the plea instead of risking a trial if defense counsel had not "misadvised" him (*id.* at

83–84).[6]

The circuit court adjudicated Carter's claim as follows:

> Defendant claims counsel was ineffective for failing to properly
> advise Defendant regarding the plea offers the State made and for
> failing to spend adequate time with him to prepare his defense and/or
> understand the State's offer, which he alleges was for 10 years in
> prison.  He alleges counsel was short and agitated toward Defendant;
> she spent one hour in face time with Defendant; her preparation for trial
> consisted of 16 hours; she could not properly communicate with
> Defendant; she failed to have him mentally evaluated; and Defendant
> did not comprehend the exposure of going to trial.

> Defendant contends the plea offer of 10 years would have been
> accepted had he not been given erroneous misadvice [sic] from trial
> counsel.  He alleges counsel told him he did not commit an armed
> robbery and "she could beat it."  He also alleges counsel's strategy was
> to allow the State to put on evidence and leave it to the jury to decide if
> the State proved its case instead of mounting a viable defense.

> Defendant's claim that he was misadvised by counsel is
> insufficient.  He fails to allege facts showing counsel's assessment of
> the chances of success at trial was unreasonable under the
> circumstances.  *See Millan v. State*, 55 So. 3d 694, 696 (Fla. 3d DCA

---

[6] In Carter's § 2254 petition, he alleges counsel told him he "could only get 15 years if he lost at
trial" (*see* ECF No. 1 at 19).  Carter did not present this factual allegation to the state court;
therefore, the court will not consider this allegation in assessing the reasonableness of the state
court's adjudication of Ground Five.

2011).  Defendant also fails to specify in this ground what defense counsel should have pursued.  He therefore fails to show deficient performance by counsel.

In order to establish prejudiced [sic] by counsel's advice to reject a plea offer, the defendant must allege and show the following:

(1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013).

This claim is insufficiently pled or refuted as to what the State and trial court were inclined to do.  Defendant alleges the State advocated the offer at the onset of trial and the trial court seemed ready to accept it.  However, the record shows there was no discussion of a plea offer prior to or after jury selection on March 27, 2017, or prior to trial on March 29, 2017.  (Exhibit F, pp. 2–4, 25–33.)  Instead, after Defendant was found guilty of the attempted robbery, there was some discussion as whether they would proceed to trial on count two, the possession offense, and the parties sought to continue sentencing on count one until after count two was decided.  (Exhibit F, pp. 179–183.)  It was also discussed that Defendant was subject to a 10-year mandatory minimum sentence as to count one.  (Exhibit F, p. 182.)

Defendant also contends the State likely would have come down on the 10-year offer had they known the true extent of his mental health history.  This part of his claim is speculative and therefore insufficient to merit relief.

Defendant also alleges counsel failed to spend adequate time with him or secure a mental health expert that would have helped Defendant understand the nature of the proceedings and the scope of

the State's offer and that he was very impressionable and did not understand the exposure of going to trial. In Ground Two, he alleges had counsel ensured he was fit to proceed, he would have accepted the offer from the State. To the extent Defendant claims that he was incompetent at the time he rejected the plea, he fails to state a sufficient claim for relief, as he could not have accepted a plea if he were incompetent. To the extent Defendant claims he would have accepted the plea had counsel spent more time with him, the claim is conclusory. Otherwise, the Court has found the record shows Defendant was able to understand the charges and the nature of the proceedings.

(ECF No. 14-10 at 109–11 (order)).

As the state court found, the record refutes Carter's assertion that the State offered the ten-year plea "at the onset of trial." The portions of the record attached to the state court's decision prove there was no discussion of a plea offer prior to or after jury selection on March 27, 2017, or prior to trial on March 29, 2017 (*see* ECF No. 14-10 at 129–44).

Carter offered no other factual allegations regarding the availability of the ten-year plea offer and at what point in the case he and defense counsel discussed it. The docket of Carter's case reflects he was arrested in June 2016 (*see* ECF No. 14-1 at 15–18 (arrest report)). The State filed discovery exhibits in July 2016 (*see id.* at 5 (progress docket showing entries from 06/16/2016 through 01/11/2017)). Depositions notices were filed in August 2016 (*see id.*). Defense counsel sought and was granted a continuance in September 2016 (*see id.*). An additional deposition notice was filed in October 2016 (*see id.*). Transcripts of proceedings held on

November 9, 2016; January 11, 2017; January 20, 2017; January 23, 2017; January 30, 2017; March 8, 2017; March 17, 2017, and March 20, 2017 reflect no mention of a plea offer by the State (*see id.* at 23–52). In the absence of any facts concerning the availability of the plea offer and at what point counsel advised Carter she could "beat" the charge, the state court reasonably concluded Carter failed to show counsel's assessment of the chances of success at trial was unreasonable under the circumstances.

Further, considering the elements of attempted robbery, the availability of an abandonment defense, and the State's evidence, counsel's assessment of the strength of Carter's defense was reasonable. To prove the crime of attempted robbery, the State was required to prove the following two elements beyond a reasonable doubt: (1) Carter did some act toward committing the crime of robbery that went beyond just thinking or talking about it; and (2) Carter would have committed the robbery except he failed or someone prevented him from committing the robbery (*see* ECF No. 14-1 at 72 (jury instructions at Carter's trial)). *See* Fla. Stat. § 777.04(1). It is a defense to a charge of attempted robbery that, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose, Carter abandoned his attempt to commit the robbery or otherwise prevented its commission (*see id.* (jury instructions)). *See* Fla. Stat. § 777.04(5)(a).

Defense counsel's theory was two-fold:  (1) the evidence did not show Carter intended to rob the store or took substantial steps in furtherance of a robbery; and (2) the evidence showed Carter abandoned any alleged attempt to rob the store (*see* ECF No. 14-10 at 189–95 (counsel's closing argument)).

The State's evidence included the following (*see* ECF No. 14-2 (trial transcript)).  Joshua Matthews was working as a clerk at the Smart Fill convenience store on June 16, 2016.   Matthews was stocking a cooler in the store when a man wearing a mask and black clothing entered the store with a gun in his hand.  Mr. Matthews hid behind a food display.  The man "yelled for someone" but Matthews remained hidden.  The man then left the store, and Mr. Matthews locked the door and pressed an alarm that alerted police.

Deputy Roe responded to the alarm.  Upon arrival, Deputy Roe looked into a fenced area on the north side of the store and saw a black male, Carter, wearing all black clothing with a t-shirt tied around his face and only his eyes exposed.  Deputy Roe testified Carter did not have a firearm in his hand.  Deputy Roe detained Carter in his patrol car and advised Carter of his *Miranda* rights.  Carter agreed to speak with Deputy Roe.  Deputy Roe's interview with Carter was recorded with Roe's in-car video camera, and the recording was published to the jury.  Carter admitted he went into the store with his face covered by the shirt, but he told Deputy Roe he was

looking for a man who owed him money and was going to beat the man up.  Carter denied he carried a gun into the store.  Deputy Roe testified he reviewed the Smart Fill's surveillance video and saw a firearm in the robber's hand.  The video was published to the jury.

Deputy Jimmy Wiggins testified he located a firearm in a neighboring yard directly behind the Smart Fill.  The firearm was admitted into evidence.

Colleen Burt, a crime scene technician with the Escambia County Sheriff's Office, testified she collected the firearm from the backyard of the residence behind the Smart Fill.  Ms. Burt testified the firearm was loaded.  Photographs of the loaded firearm were admitted into evidence.  On cross-examination, Ms. Burt testified she had the ability to process the firearm for fingerprints and DNA, but she was unable to "lift" any fingerprints from the firearm.  Burt testified she swabbed the firearm for DNA but did not conduct a DNA analysis.

Counsel's choice of defense strategy was reasonable.  The fact that Carter ultimately lost at trial does not render counsel's assessment of the relative strength of Carter's defense unreasonable.  *See Strickland*, 466 U.S. at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ."); *see also Premo v. Moore*, 562 U.S. 115, 132 (2011)

("[H]indsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predications of how the trial would proceed.").

The other aspect of Carter's claim is that defense counsel was deficient for failing to obtain a mental health expert to determine Carter's ability to understand the proceedings and/or assist Carter in understanding the charges, the State's evidence, his sentence exposure, and the plea offer. In Carter's and the state court's discussions of this aspect of Ground Five, they referenced Ground Two of Carter's amended Rule 3.850. In that claim, Carter argued defense counsel was ineffective for failing to investigate and ensure he was competent to stand trial (*see* ECF No. 14-10 at 66–71).[7] Carter alleged he suffered from ADHD, bipolar disorder, a "major learning disability," and major depression brought on by the death of his mother in 2014 (two years prior to the attempted robbery) (*id.* at 66). Carter alleged he was treated with counseling and psychotropic medication (*id.*). Carter alleged he mentioned all of this to defense counsel, but counsel never had him evaluated for competency (*id.*). Carter alleged he did not understand the nature of the proceedings or the "legalese" counsel spoke (*id.*). Carter alleged counsel did not explain, *in a way he understood*, the charges, the law, his sentence exposure, or the ten-year plea

---

[7] Carter did not present this IAC claim (that counsel was ineffective for failing to request a competency evaluation) in his § 2254 petition.

offer (*id.* at 67 (emphasis added)).  Carter claimed defense counsel should have filed

a motion for a mental evaluation to determine his competency (*id.*).  Carter alleged

if counsel had obtained a mental health expert to ensure he was "fit to proceed," he

would have accepted the ten-year plea offer (*id.* at 71).

The state court's discussion of Carter's allegations in Ground Two was the

following, which informed its adjudication of Ground Five:

> Defendant claims counsel was ineffective for failing to
> investigate and ensure Defendant was competent to stand trial.  He
> alleges that he suffers from ADHD, bipolar disorder, a major learning
> disability, and depression and that he had been treated at Lakeview
> Center and had undergone two years of counseling with powerful
> psychotropic medication.  He alleges this had been mentioned to
> counsel before pretrial but he was never evaluated.  Defendant asserts
> he was incompetent during the proceedings.

> Defendant's alleged psychological issues do not necessarily
> establish incompetence to stand trial.  Instead, Defendant must allege
> facts showing counsel had reason to question his competency to
> proceed.  *See Thompson v. State*, 88 So. 3d 312, 319 (Fla. 4th DCA
> 2012).  Competency depends on "whether the defendant has sufficient
> present ability to consult with counsel with a reasonable degree of
> rational understanding and whether the defendant has a rational, as well
> as factual, understanding of the pending proceedings."  *See* Fla. R.
> Crim. P. 3.211 (a)(l).  Also, Defendant must allege facts showing there
> was a reasonable probability that he would have been found
> incompetent.  *See* [*Thompson*,] 88 So. 3d at 318.

> Defendant fails to allege specific facts showing he was unable to
> communicate with counsel or to show counsel should have had reason
> to question his competency to proceed.  *Caudle v. State*, 277 So. 3d
> 304, 307 (Fla. 1st DCA 2019).

Moreover, the record shows his understanding of the proceedings. First, Defendant was interviewed at the time of his arrest on June 16, 2016. (Exhibit F, pp. 70–81.) He volunteered multiple statements admitting he went into the store but denying that his intent was to rob the store. He also exhibited his understanding of his *Miranda* rights and his realization that he was going to jail.

During jury selection on March 27, 2017, Defendant answered the trial court's questions appropriately and affirmed that he was satisfied with the jury selected. (Exhibit F, pp. 25–26.) After the conclusion of the State's case at trial on March 29, 2017, Defendant stated he had attended eleventh grade in school and could read and write English. (Exhibit F, p. 111.) He denied he had any drugs or alcohol in the past 24 hours, and he affirmed he understood the proceedings and did not wish to testify. (Exhibit F, pp. 110–112.)

At the plea hearing on June 15, 2017, Defendant answered the trial court's questions appropriately and clarified that he wished to enter a plea if the time would be concurrent to the sentence he had just received. (Exhibit G, pp. 17–19.)

Also, during the sentencing hearing, counsel for Defendant submitted a letter to the trial court from Defendant. (Exhibit G, p. 4.) In the letter, Defendant stated he understood the nature of his offense and the seriousness of it, he acknowledged the anguish his actions must have caused the victim, he stated he did not complete the crime or take anything, he asked for forgiveness, he mentioned how alcohol can impair one's judgment, and he asked the trial court not to impose a long sentence. (Exhibit H.)

In September 2016, Defendant submitted a letter to the trial court asking for help with his drug and alcohol addictions and asking for the State and the trial court to place him in a program, followed by some supervision, so that he could take care of his wife and seven children. (Exhibit I.)

In December 2016, Defendant submitted a letter titled "Directions to the Clerk," asking the clerk to file the copy of the

attached letter for the record.  (Exhibit J.)  The letter was to his public defender and requested information and discovery and copies of applicable statutes; for her to visit prior to his next court date of January 11, 2017; and for her to put in for a bond reduction.

After trial, Defendant filed notices of appeal and a change in address.  (Exhibits K, L, M.)

The Court notes that despite his prior record of multiple offenses, Defendant makes no allegations of any previous findings of incompetency.  (Exhibit G, pp. 13–14; Exhibit N.)  *See* [*Thompson v. State*,] 88 So. 3d [312,] 320 [Fla. 4th DCA 2012] (finding that one of the circumstances to be considered when determining whether to hold a hearing on a claim of incompetence is "whether experts have previously or subsequently opined that defendant was incompetent").

In light of the above, Defendant fails to show a reasonable probability that a psychological evaluation would have found him incompetent to stand trial.  Instead, the record, which includes his interview, pro se filings, and communication with the trial court, shows he had a good understanding of the proceedings and charges against him.  *See Callaway v. State*, 202 So. 3d 901, 904 (Fla. 3d DCA 2016) (finding hearing transcripts demonstrated the defendant's understanding of the charges and proceedings).

Defendant also alleges trial counsel failed to explain the nature of the proceedings to his understanding.  He alleges he did not understand legalese, and counsel failed to explain the role of the judges, lawyers, doctors, and witnesses and failed to explain the charges, the law, his exposure, nor the favorable plea offer.  However, Defendant fails to allege facts showing he did not understand the proceedings and that he communicated his lack of understanding to counsel or counsel should have had reason to believe he did not understand.  He also fails to allege what counsel should have done or facts showing further explanation would have changed the outcome of the proceedings.  Moreover, as stated above, the record belies that Defendant did not understand the proceedings or the roles of the court and counsel.

Defendant also alleges trial counsel failed to adequately prepare Defendant for trial by not spending enough time with Defendant.  His allegations are insufficient to show that spending more time with Defendant would have changed the defenses or resulted in a different outcome.  *See* [*Johnson v. State*,] 247 So. 3d [689,] 694–695 [Fla. 1st DCA 2018].

(ECF No. 14-10 at 104–07).

A defendant must have a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, which includes a rational as well as factual understanding of the proceedings against him.  *Dusky v. United States*, 362 U.S. 402 (1960).  The Supreme Court set out the two-pronged standard for determining legal competency to stand trial:  (1) whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and (2) whether the defendant has a rational as well as a factual understanding of the proceedings against him.  *Dusky*, 362 U.S. at 480–81.  Neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.  *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995).  A lifelong history of mental illness and emotional problems does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to the defendant's competency at the time in question.  *Id.* at 1106.  Treatment with anti-psychotic drugs does not per

se render a defendant incompetent to stand trial. *Id.* at 1107. Florida's competency standard mirrors the standard announced in *Dusky*. *See* Fla. Stat. § 916.12(1)

Considering the state court's findings with regard to the numerous examples of Carter's understanding of the proceedings, which are supported by the state court record, the state court reasonably rejected Carter's claim that counsel was deficient for failing to obtain a mental health expert to assist Carter in understanding the charges, the State's evidence, his sentence exposure, and the plea offer. Further, the state court reasonably rejected as conclusory Carter's assertion he would have accepted the plea offer if counsel had spent more time with him. Carter did not allege any facts suggesting that more time with counsel would have changed counsel's assessment of the case or Carter's understanding of it.

Carter failed to demonstrate that the state court's adjudication of Ground Five was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of *Strickland*. Carter thus is not entitled to habeas relief on Ground Five.

### F. Ground Six: "Counsel rendered I.A.C. by failing to file for a *Daubert* hearing."

Carter alleges the evidence did not conclusively prove the robber carried a firearm (ECF No. 1 at 21). Carter alleges the store's surveillance video did not clearly show the robber carried a firearm, and the store clerk's testimony was

"lacking" (*id.*).  Carter alleges officers discovered a firearm in lot that adjoined the store, on the other side of a six-foot fence (*id.*).  Carter apparently alleges defense counsel was ineffective for failing to file a motion for a *Daubert* hearing[8] on the admissibility of evidence of the firearm.  Carter states he presented Ground Six in his second Rule 3.850 motion, which was pending when he filed his federal habeas petition (*id.* at 21–22).

The State asserts an exhaustion defense (ECF No. 14 at 50–52).  The State asserts Carter presented Ground Six in Ground Two of his second Rule 3.850 motion, wherein he alleged defense counsel was ineffective for failing to file a pretrial motion for a *Daubert* hearing to determine the admissibility of the gun and the admissibility of the store's video recording (*id.* at 50).  The State asserts the circuit court denied the second Rule 3.850 motion as untimely and successive under state procedural rules, and the First DCA affirmed (*id*. at 50–51).  The State asserts the state court's ruling was based upon a firmly established and regularly followed state procedural rule (*id.* at 51–52).  Accordingly, the claim is procedurally barred from federal review (*id.*).

A petitioner who fails to properly raise his federal claim in state court is procedurally barred from pursuing the same claim in federal court absent a showing

---

[8] *Daubert v. Merrell Down Pharm., Inc.*, 509 U.S. 579 (1993).

of cause for and actual prejudice from the default. *See Wainwright v. Sykes*, 433

U.S. 72, 87 (1977). Such procedural default can arise in two ways. *Bailey v. Nagle*,

172 F.3d 1299, 1302–03 (11th Cir. 1999). First, if the petitioner *raises* a claim to

the state court, and the state court *correctly applies a procedural default principle of*

*state law* to arrive at the conclusion that the petitioner's federal claim is barred, the

federal court must respect the procedural bar. *Id.* at 1302 (citations omitted).

Second, if the petitioner simply *never raised* a claim in state court, and it is obvious

that the unexhausted claim would now be procedurally barred due to a state-law

procedural default, the federal court may foreclose the petitioner's filing in state

court; the exhaustion requirement and procedural default principles combine to

mandate dismissal. *Id.* at 1303.

In the first instance, the federal court must determine whether the last state

court rendering judgment clearly and expressly stated its judgment rested on a

procedural bar. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court

must determine whether any future attempt to exhaust state remedies would be futile

under the state's procedural default doctrine. *Id.*

Carter's claim falls under the first category. Carter presented Ground Six as

Ground Two of his second Rule 3.850 motion (ECF No. 14-15 at 14–19). The circuit

court denied the Rule 3.850 motion as untimely and successive in an order rendered

on June 2, 2021 (*id.* at 52–53 (order)).  The First DCA affirmed the circuit court's

decision per curiam without written opinion.  *Carter v. State*, 327 So. 3d 804 (Fla.

1st DCA 2020) (Table).

This court presumes that the First DCA's rejection of Carter's claim rested on

the same procedural bars imposed by the lower court.  *See Ylst v. Nunnemaker*, 501

U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting

a federal claim, later unexplained orders upholding that judgment or rejecting the

same claim rest upon the same ground . . . .  [W]here, as here, the last reasoned

opinion on the claim explicitly imposes a procedural default, we will presume that a

later decision rejecting the claim did not silently disregard that bar and consider the

merits.") (citation omitted); *see also Richter*, 562 U.S. at 99–100 (citing *Ylst* as an

example of where the presumption of a merits adjudication is overcome).

The state circuit court imposed two procedural bars:  (1) Florida's prohibition

on successive Rule 3.850 motions that abuse the procedure, and (2) Florida's two-

year statute of limitations for filing a Rule 3.850 motion.  The state court's

imposition of Florida's bar on successive Rule 3.850 motions that abuse the

procedure is adequate to support its judgment.  Rule 3.850 provides:

> [A] court may dismiss a second or successive motion if the court finds
> that it fails to allege new or different grounds for relief and the prior
> determination was on the merits or, if new and different grounds are
> alleged, the judge finds that the failure of the defendant or the attorney

> to assert those grounds in a prior motion constituted an abuse of the procedure or there was no good cause for the failure of the defendant or defendant's counsel to have asserted those grounds in a prior motion. When a motion is dismissed under this subdivision, a copy of that portion of the files and records necessary to support the court's ruling shall accompany the order denying the motion.

Fla. R. Crim. P. 3.850(h)(2). As required by the Rule, the state circuit court attached to its order a copy of the final order entered in Carter's first Rule 3.850 proceeding. (ECF No. 14-15 at 57–73).

Carter's procedural default of Ground Six—raised in his successive motion that abused the Rule 3.850 procedure—bars federal review of that claim. *See Jennings v. McDonough*, 490 F.3d 1230, 1247–48 (11th Cir. 2007) (holding that state court's conclusion that petitioner's claims were procedurally barred by Florida's rule against successive Rule 3.850 motions was a state law ground independent of the federal question and adequate to support the state court's judgment, thereby rendering the claims procedurally defaulted on habeas review); *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) (recognizing that the Eleventh Circuit "already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law") (citation omitted).

Ground Six is procedurally barred from federal review. Carter has not demonstrated he is entitled to federal review of Ground Six through any recognized

exception to the procedural bar.  Therefore, habeas relief is not warranted on Ground Six.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    The petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

3.    The clerk be directed to enter judgment accordingly and close the case.

At Pensacola, Florida, this <u>14th</u> day of March 2022.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**